IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MISAEL ROQUE-ESPINOZA,

        Petitioner,

vs.                         No. 04-2660-Ml/P

T.C. OUTLAW,

        Respondent.

---

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS
ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241
ORDER DENYING IRREGULAR MOTION
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Petitioner Misael Roque-Espinoza, Bureau of Prisons ("BOP") inmate registration number 13229-424, an inmate at the Federal Correctional Institution in Memphis ("FCI-Memphis"), filed a pro se petition pursuant to 28 U.S.C. § 2241 on August 25, 2004, along with an application to proceed in forma pauperis. The Court issued an order on October 12, 2004 denying leave to proceed in forma pauperis and directing the petitioner to pay the habeas filing fee within thirty days. Because it appeared that the habeas filing fee had not been paid, as a copy of the receipt was not placed in the case file and the payment was not noted on the docket sheet, the Court issued an order on December 8, 2004 dismissing the petition without prejudice, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute. Judgment was entered on December 8, 2004. On

December 20, 2004, petitioner filed a motion for reconsideration, which the Court construed as a timely motion pursuant to Fed. R. Civ. P. 59(e), in which he provided a receipt demonstrating that the habeas filing fee was paid by check on October 27, 2004, within the time specified in the October 12, 2004 order. The Court issued an order on April 22, 2005 granting the motion for reconsideration, vacating the judgment, and directing the respondent to file a response. On May 17, 2005, respondent filed a motion to dismiss the petition, and the petitioner filed a response to that motion on May 25, 2005. Subsequently, on November 9, 2005, petitioner filed a motion inquiring about the status of his petition.

This case involves a disciplinary write-up the petitioner received for offering a staff member something of value. The facts appear to be as follows:[1]

1.  Petitioner has been at FCI-Memphis since July 29, 2003. He was previously at the Federal Correctional Institution in Milan, Michigan ("FCI-Milan") from October 23, 2002 to July 23, 2003.[2] He is serving a seventy-two (72) month sentence for illegal re-entry by a deported alien, in violation of 8 U.S.C. § 1326(a) & (b)(2).[3]

2.  It is alleged that, on March 24, 2003, at approximately 2:15 p.m., during a Life Connections

---

[1]     Although the petitioner has not formally responded to the statement of undisputed facts submitted by the respondent, the Court has attempted, by examining the petition and the response to the motion to dismiss, to identify the areas of factual agreement.

[2]     Declaration of Denise M. Gottlieb, dated May 12, 2005 ("Gottlieb Decl."), ¶ 6 & Att. A, attached as Ex. 1 to Response Opposing Petition for Habeas Corpus, Motion to Dismiss, and Memorandum of Law, filed May 17, 2005 ("R. Br."). Although the Gottlieb Declaration states that petitioner is no longer at FCI-Memphis, he has not filed a change of address and the BOP website indicates that that he is presently at that facility.

[3]     Gottlieb Decl., Att. B.

religious service in the common area of A-unit at
FCI-Milan, Petitioner asked Correctional Officer
("C.O.") K. Schindler if she wanted some coffee.
C.O. Schindler informed Petitioner that she was not
able to accept anything from him. Approximately one
week prior to this incident, Petitioner allegedly
asked C.O. Schindler if she wanted a banana.[4]

3.   On March 27, 2003, C.O. Schindler prepared an
incident report regarding Petitioner's offer of
coffee. The incident was recorded as a violation of
Code #216, Offering Staff Anything of Value.[5]

4.   The incident report was delivered to Petitioner on
March 27, 2003 at 6:34 p.m.[6]

5.   Petitioner received a Unit Disciplinary Committee
("UDC") hearing on March 28, 2003.[7] The UDC referred
the action to the Discipline Hearing Officer
("DHO") after determining that "based on the
seriousness of the charge greater sanctions should
be imposed than are available at the UDC level."[8]

6.   On March 28, 2003, Petitioner received notification
that he was being referred to the DHO.[9]

7.   On April 3, 2003, C.O. Schindler prepared a
memorandum to the Lieutenant's Office detailing
Petitioner's alleged misconduct.[10]

8.   The DHO hearing was held on April 10, 2003 at 9:15
a.m.[11] The DHO found Petitioner committed the
prohibited act of Offering a Staff Member Anything

---

[4]    Id., Att. C. The wording of this proposed factual finding has been
altered to make clear that Petitioner disputes C.O. Schindler's version of events.
In the petition, Petitioner asserts that "I am innocent of this charge and did not
attempt to Bribe a Staff by offering a cup of coffee." Pet. at 3.

[5]    Id., Att. C.

[6]    Id.

[7]    Id., Att. F.

[8]    Id.

[9]    Id.

[10]   Id., Att. D.

[11]   Id., Att. E.

of Value and sanctioned him with the disallowance of twenty-eight (28) days good conduct time, thirty (30) days disciplinary segregation, forfeiture of fifty-four (54) days non-vested good conduct time, and removal from the Life Connections Program.[12] The DHO also recommended Petitioner receive a disciplinary transfer.[13]

9.   Petitioner has exhausted all available administrative remedies in this case.[14]

In his petition, Roque-Espinoza challenges his disciplinary conviction on the grounds that "(1) . . . I was with staff members at the time of the incident, and (2) the 81-days lost good time is in violation of statute restricting such sanctions to 54-days earned 'in-year' and (3) the incident report was time barred because over 24 hours elapsed after the alleged incident before the report was filed." Pet. at p. 3.  He seeks "restoration of the 81 days lost good time and removal of the Incident Report from [his] Central File." Id.[15]

     With respect to the first issue raised by Roque-Espinoza, that he is actually innocent of the disciplinary offense, this Court is not authorized to conduct a de novo review of the evidence presented at the disciplinary hearings. Instead, this Court must determine whether the hearing afforded the petitioner satisfies the requirements of due process. In Wolff v. McDonnell, 418 U.S. 539

---

[12]   Id.

[13]   Id.

[14]   Gottlieb Decl., ¶ 5.

[15]   He further states that "I've already served 30 days in Disciplinary Segregation and received a Disciplinary Transfer for the Incident; also removed from the Life Connections Program which was very helpful to me in my rehabilitation effort." Id.

4

(1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (I) written notice of the charges at least twenty-four (24) hours prior to the hearing, id. at 563-64; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," id. at 566; and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action, id. at 564. Moreover, "revocation of good time does not comport with 'the minimum requirements of procedural due process' . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Massachusetts Correctional Instit., Walpole v. Hill, 472 U.S. 445, 454 (1985); see also id. at 455-57.

Respondent's brief sets forth the procedures that were followed in Roque-Espinoza's disciplinary hearings and explains why those procedures satisfy the standards articulated in Wolff. See R. Br. at 2-4, 6-8; see also 18 U.S.C. § 4042(a)(3) (authorizing BOP to discipline prisoners); 28 C.F.R., Part 541 (disciplinary procedures). It is not necessary to analyze those procedures at length, because Roque-Espinoza does not contend that the requirements of Wolff were not satisfied.

Instead, Roque-Espinoza's argument that he was with staff members at the time of the incident appears to be a challenge to

the sufficiency of the evidence presented at his disciplinary hearing. The DHO summarized the evidence presented at the hearing:

> The DHO finds that on 3-24-03, at approximately 2:15 p.m., you committed the prohibited act(s) of Offering Staff Anything of Value, code 216. This is based on the reporting staff's statement that on the above time and date, she was making rounds in the unit. When you saw you [sic], you reportedly offered her a cup of coffee. She told you no and continued on her rounds. Additionally, approximately one week prior to this incident, the reporting staff stated that as she passed your cell, you offered her a banana.

> The DHO took administrative notice that on 3-24-03 the reporting staff noted the above incident in her separate memo to the lieutenant's office. She notes she did not write an incident report prior to her scheduled days off, because she was unaware the information required an incident report being written.

> The DHO also took administrative notice that on 3-27-03, the investigating lieutenant noted the incident report was delayed due to the reporting staff only documenting the incident in the aforementioned memo, then going on her two days off. She did not know she was to write an incident report.

> The DHO also relied upon as evidence, a supplemental memo from the reporting staff, stating she was making her rounds through the unit and observed you sitting with other members of the Life Connections Program. As she passed your left side, you leaned back in your chair with coffee cup in hand and asked her if she wanted some coffee.

> You appeared before the DHO denying the charge(s) as noted in section 3 of the report.

> The DHO considered the statement of your staff rep. A review of the written statement provided by Mr. Thurner, only serves [to] places [sic] you at the scene of the incident and offers no evidence to refute or mitigate the charge.[16]

-----

[16]     Ronald Thurner is a volunteer from the Life Connections Program. He submitted a statement, dated March 31, 2003, stating that "[a]fter careful review, I can attest that I was meeting with my Catholic inmates on Monday, March 24, 2003 from 2:10 p.m.-3:00 p.m. The small group included Ted Klak, Michael Witoszynsky and
(continued...)

> However, the DHO gave great weight of evidence to the statement of the reporting staff, acknowledging the duty and obligation to report the truth and submit accurate statements. Though your claim to innocence is your presence and participation in the Life Connections Program, the reporting staff states the incident happened during your participation in said program.
>
> Therefore, the DHO finds you committed the prohibited act(s).

Gottlieb Decl., Att. E. The DHO relied on the written statements of C.O. Schindler, who described the incident in detail.[17] The April 3, 2003 statement indicates that the incident occurred while Roque-Espinoza was with two other inmates and the volunteer from the Life Connections Program. Mr. Thurner's statement only confirms that Roque-Espinoza was in a meeting of the Life Connections Program during the time in question and does not address whether he offered coffee to C.O. Schindler.[18] The decision of the DHO is supported by "some evidence" and, therefore, the requirements of due process have been satisfied. This aspect of the petition is without merit, and the Court GRANTS respondent's motion to dismiss as to this issue.

Next, the petitioner asserts, without citation to any authority, that the sanction of eighty-one (81) days of good time credit is more than the maximum authorized by law. Pursuant to 18 U.S.C. § 3624(b)(1), prisoners can earn a maximum of fifty-four

---

[16]    (...continued)
Miseal Roque." Gottlieb Decl., Att. E.

[17]    Copies of the two written statements are attached as Atts. C & D to the Gottlieb Declaration.

[18]    Petitioner apparently did not attempt to call the two other inmates who were present as witnesses.

(54) days of sentence credit each year, "subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." If an inmate has, during a given year, "not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate." Id.

Pursuant to 28 C.F.R. § 541.13(a), a violation of Code 216, "Giving or offering an official or staff member a bribe, or anything of value," is classified as a high category offense, and the available sanctions include forfeiture of earned statutory good time or non-vested good conduct time up to fifty percent (50%) or up to sixty (60) days, whichever is less,[19] and disallowance of between 25 and 50% (14-27 days) of good conduct time credit available for the year in which they are sanctioned. The respondent asserts that "[p]etitioner's sanctions for violating Code 216 included the disallowance of 27 days good conduct time and the forfeiture of 54 days of non-vested good conduct time—well within the confines of the statute and the regulation." R. Br. at 10. In other words, Roque-Espinoza lost twenty-seven (27) days of good conduct time he could have earned for 2003, the year in which the offense occurred, plus fifty-four (54) days of good time credits he

---

[19] Because Roque-Espinoza is a "PLRA inmate" who has been sentenced for an offense committed on or after April 26, 1996, this aspect of the sanctions is mandatory. 28 C.F.R. § 541.13(a)(2).

had previously accumulated.[20] The petitioner does not respond to these calculations in his response to the motion to dismiss, except to assert that the sanction imposed was grossly disproportionate to the alleged offense. That argument is not a proper basis for habeas relief, which is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a)(3).[21] The Court GRANTS respondent's motion to dismiss as to this issue.

Finally, Roque-Espinoza complains that the disciplinary charge was time barred because it was issued more than twenty-four (24) hours after the alleged incident. Respondent notes that Wolff requires only that a prisoner receive at least twenty-four hours notice prior to a disciplinary hearing. R. Br. at 7 n.3. In his response, petitioner asserts that he is relying on the regulations governing disciplinary hearings rather than on the due process clause. Petitioner relies on 28 C.F.R. § 541.11, Table 2, which states, in part, that a staff member should serve an inmate with a disciplinary report "ordinarily maximum of 24 hours" after the staff member learns of the alleged infraction. The table further

---

[20]    Although respondent did not provide any documentation supporting the precise calculation with respect to the forfeiture of the 54 days of non-vested good conduct time, the inmate data sheet submitted by respondent indicates that, as of May 3, 2005, Roque-Espinoza had accumulated 135 days of good conduct time.

[21]    The DHO report provides an explanation for the severity of the action taken: "Offering a staff member anything of value is a blatant attempt to subvert staff's integrity. After careful consideration of all relevant facts, the DHO imposed a Loss of Privilege sanction. Your behavior suggests propensity towards manipulation at the expense of staff's loyalty and integrity. The DHO believes such exploitation requires greater controls and recommends a disciplinary transfer." Gottlieb Decl., Att. E.

states, however, that "[t]hese time limits are subject to exceptions as provided in the rules."

The regulations governing the initial report and the delivery of the incident report to the inmate, 28 C.F.R. § 541.14(a), provides in pertinent part as follows:

> (a) Incident report. . . . [W]hen staff witnesses or has a reasonable belief that a violation of Bureau regulations has been committed by an inmate, and when staff considers informal resolution of the incident inappropriate or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant. . . .

The regulations further require that "[s]taff shall conduct the investigation promptly unless circumstances beyond the control of the investigator intervene," id., § 541.14(b), and that the inmate receives a copy of the incident report, or a copy of the charges, "prior to being seen by the investigating agency," id., § 541.14(b)(2). Nothing in the regulations requires dismissal of the charges because of a delay in delivering the incident report to the prisoner.

In this case, as previously noted, see supra p. 6, C.O. Schindler noted the incident in question in a memo to the lieutenant on March 24, 2003, the day of the incident, but did not prepare a formal incident report at that time because she did not know she was required to. C.O. Schindler was not scheduled to work the next two days but, on her return to work on March 27, 2003, she prepared an incident report that was delivered to Roque-Espinoza at 6:34 p.m. The DHO considered petitioner's arguments about the timeliness of the report and accepted the explanation for why an

10

incident report was not prepared immediately after the incident. As the rules do not require dismissal of the charge because of a delay in preparing the incident report, the Court GRANTS respondent's motion to dismiss this aspect of the petition.

For all the foregoing reasons, the petition is without merit and is DISMISSED. The motion seeking a prompt decision on the petition is DENIED as moot.

Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. Stanford v. Parker, 266 F.3d 342 (6th Cir. 2001); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063 (6th Cir. 1997). Section 2253 does not apply to habeas petitions by federal prisoners under § 2241. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 (10th Cir. 1997); Ojo v. Immigration & Naturalization Serv., 106 F.3d 680, 681-82 (5th Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Nevertheless, a habeas petitioner seeking to appeal is obligated to pay the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917. Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915, it is unclear how habeas petitioners establish a right to proceed in forma pauperis and avoid this filing fee.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether those requirements apply to § 2241 cases. Kincade v.

Sparkman, 117 F.3d 949, 951-52 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

      The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. See McIntosh, 115 F.3d at 810; United States v. Simmonds, 111 F.3d 737, 743 (10th Cir. 1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. Graham v. United States Parole Comm'n, No. 96-6725, 1997 WL 778515 (6th Cir. Dec. 8, 1997), aff'g Graham v. United States, No. 96-3251-Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of McIntosh persuasive, and because the Court finds that this conclusion naturally follows from the Sixth Circuit's decision in Kincade, the Court concludes that the PLRA does not apply to § 2241 petitions. Cf. Greene v. Tennessee Dep't of Corrections, 265 F.3d 369 (6th Cir. 2001) (certificate of appealability requirement is applicable to state prisoner bringing § 2241 petition).

      The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. Kincade, 117 F.3d at 951. Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at

952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court granted respondent's motion to dismiss, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 29th day of March, 2006.


  /s/ Jon P. McCalla
  JON PHIPPS McCALLA
  UNITED STATES DISTRICT JUDGE